### In re IMPERIAL TOOLING AND MANUFACTURING, INC., Debtor.

### No. 03–35058–SAF–7.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Aug. 27, 2004.

---

Diane Reed, Waxahachie, TX, Chapter 7 Trustee.

Gerald P. Urbach, Hiersche, Hayward, et al., Addison, TX, for Ballister Group, Inc.

St. Clair Newbern, III, Ft. Worth, TX, for E.W. Yost Company.

Anthony A. Petrocchi, Wiel & Petrocchi, P.C., Dallas, TX, for Nathan P. Newbern and Geraldine Schneider.

## *MEMORANDUM OPINION AND ORDER*

STEVEN A. FELSENTHAL, Chief Judge.

Diane G. Reed, the Chapter 7 trustee of the bankruptcy estate of Imperial Tooling and Manufacturing, Inc., the debtor, moves the court, pursuant to Bankruptcy Rule 9019, to approve a settlement with Ballister Group, Inc. Creditors E.W. Yost Company, Nathan P. Newbern and Geraldine Schneider oppose the motion. The court conducted an evidentiary hearing on the motion on July 2 and 21, 2004.

A motion by a trustee under Rule 9019 raises a core matter over which this court has jurisdiction to enter a final order. 28 U.S.C. §§ 157(b)(2)(O) and 1334. This memorandum opinion contains the court's findings of fact and conclusions of law. Bankruptcy Rules 7052 and 9014.

A court should approve a settlement under Rule 9019 if the settlement is within a range of reasonableness, fair and equitable, and in the best interest of the bankruptcy estate. In making that determination, the court must make a well-informed decision, comparing the terms of the compromise with the likely rewards of litigation. The court must evaluate (1) the probability of success in the litigation with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and (3) all other factors bearing on the wisdom of the compromise. Under the first factor, the court does not conduct a mini-trial, but the court does apprise itself of the relevant facts and law to make an informed decision. Under the third category, the court should consider the best interest of creditors, with proper deference to their reasonable views. *In re Cajun Elec. Power Co-op., Inc.*, 119 F.3d 349, 356 (5th Cir. 1997).

The trustee proposes to resolve several matters with Ballister upon payment from Ballister of $20,000. The debtor owned real property, secured by a second lien held by Ballister. The debtor obtained a release from the first lienholder, the United States Department of Defense. The debtor transferred the property to a related entity. Ballister conducted a foreclosure sale. Ballister then sold the property. The trustee is holding approximately $472,000 from the sale, pending the outcome of the litigation covered by this motion. Under the proposed settlement, the trustee will release proceeds from the sale of property, totaling approximately $472,000 upon the payment of $20,000. The trustee will release all claims of the estate for recovery of allegedly fraudulent

transfers. Ballister will withdraw its proof of claim.

The objecting creditors contend that the trustee has not obtained sufficient consideration for the release of the funds and her fraudulent conveyance claims. They argue that the trustee should insist upon a more substantial settlement payment by Ballister or pursue the litigation.

The trustee inherited a bankruptcy estate of a debtor that had been involved with its former insiders and Ballister in state court litigation. Ballister had loaned money to the debtor. After the loan had been made, the debtor transferred a security interest in the property to Ballister. Ballister held a second lien position. Upon foreclosure by Ballister, Ballister paid the first lienholder. The parties do not assert that Ballister's foreclosure had not been conducted properly under Texas law.

Nevertheless the objecting creditors contend that the foreclosure amounted to a fraudulent conveyance, avoidable under state law or the Bankruptcy Code. The trustee responds that she lacks estate resources to retain an attorney to prosecute an avoidance action and that she questions the likelihood of success of an avoidance action given the facial propriety of the foreclosure under state law. The trustee recognizes that she holds funds from the sale of the property. After the foreclosure, Ballister sold the property. With the filing of the bankruptcy case, the parties agreed that the trustee would hold the proceeds of the sale until the resolution of the litigation. If the trustee avoids the foreclosure, then the funds would become property of the estate. Ballister would assert its secured claim. The trustee observes, therefore, that a successful avoidance action will not benefit unsecured creditors unless she can also equitably subordinate Ballister's claim below the claims of general unsecured creditors.

The objecting creditors argue that the trustee has not adequately investigated the Ballister transaction with the debtor. The administration of this case has been problematic through no fault of the trustee. The case had been commenced by an involuntary petition. Objecting creditor Newbern had been the president of the debtor. Newbern sold the debtor to Kenneth Frisbie. Objecting creditor Schneider is Newbern's mother. Frisbie has been less than cooperative with the trustee, requiring the entry of orders by this court to assist the trustee in the administration of the estate. Frisbie and Henry J. Martyn III, the principal of Ballister, have a working and business relationship, sharing office space. The trustee lacks funds, other than the escrowed sales proceeds, with which to conduct an investigation. Counsel for the objecting creditors have offered to assist, but Ballister contends that they cannot be employed by the bankruptcy estate because of their alleged conflicts. One of the attorneys is the brother of Newbern and the son of Schneider.

Against this background, the court assesses the probability of success in the litigation, giving due deference to the reasonable views of the creditors while considering the trustee's handicaps.

Prior to the bankruptcy case, Yost and Schneider filed a complaint in state court to avoid the Ballister foreclosure under the Texas Uniform Fraudulent Transfer Act. Tex. Bus. & Com.Code Ann. § 24.001 et seq. (Vernon 2002). With the bankruptcy petition, the claim became property of the bankruptcy estate for the trustee to prosecute. 11 U.S.C. §§ 541(a) and 544. The complaint alleges, in summary, that the debtor transferred the property to an affiliated entity with the intent to delay, hinder and defraud creditors by creating a "ruse" for Ballister to declare a default of its secured loan. The complaint further alleg-

es that the debtor, with Ballister, deceived the United States Department of Defense, the first lienholder, inducing that creditor to release its claim for relatively little consideration. The complaint also alleges that Ballister foreclosed on its lien for less than reasonably equivalent value at a time when the debtor was insolvent. The complaint seeks to void the foreclosure sale. The creditors originally requested that upon avoiding the transfer, they could execute on their claims. With the bankruptcy case, the property would become property of the bankruptcy estate.

After the filing of the bankruptcy case, Ballister filed an adversary complaint seeking a declaration that the state causes of action belonged to the bankruptcy estate and that the trustee had no rights in the foreclosed property. *Ballister Group, Inc., v. Reed, et al.*, adv. proc. no. 03–03761, filed October 10, 2003. The court entered a partial summary judgment declaring that the state causes of action belonged to the bankruptcy estate, to be prosecuted or otherwise resolved by the trustee. Ballister also filed a proof of a secured claim against the bankruptcy estate based on the note and lien on the property.

At a trial on the merits of an avoidance action based on an allegedly fraudulent transfer, the trustee would likely establish that the debtor was insolvent at the time of the transfer. Indeed, based on the evidence from the settlement hearing, the trustee would likely establish that the debtor was insolvent at the time that it transferred the security interest to Ballister. Ballister foreclosed on October 2, 2001. The Department of Defense (DOD) apparently executed a release of its lien in July 2001, but, also apparently, by agreement, held the release until it received its agreed consideration. Ballister did not file the release until January 2002. Consider-

ing the amount of the DOD's lien, as well as Ballister's lien, both Newbern and Martyn testified that the debtor's liabilities exceeded the value of its assets at the time of the foreclosure. Given the amount of the DOD lien and the value of the property, Newbern also testified that the debtor was insolvent when it transferred the security interest to Ballister.

It is not likely that the trustee could avoid the transfer of the security interest in the deed of trust itself. Although the parties executed the deed of trust after the loan had been made, the deed of trust appears to be facially valid. Also, the trustee likely could not avoid the deed of trust given the passage of time. There does not appear to be evidence suggesting that Ballister did not foreclose pursuant to state law. *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 545, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). As a result, the amount obtained at the foreclosure sale is deemed to constitute reasonably equivalent value. With due consideration for the uncertainty in fact and law, the trustee has a relatively small probability of success in avoiding the foreclosure based on a theory of a constructively fraudulent transfer.

However, the trustee may have a significantly greater probability of success in avoiding the foreclosure based on a theory of intent to hinder, delay or defraud any creditor of the debtor. Tex. Bus. & Com.Code Ann. § 24.005(a)(1)(Vernon 2002). Under Texas law, the intent to hinder or delay or defraud any creditor are three separate elements. Each one on its own may make a transfer fraudulent. *In re Brentwood Lexford Partners, LLC*, 292 B.R. 255, 262–63 (Bankr.N.D.Tex. 2003). Intent to hinder, delay or defraud may be established by circumstantial evidence. *Id.* at 263. In assessing that evidence, the courts consider "badges of fraud." Section 24.005(b) of the Texas

Business & Commerce Code codifies eleven, non-exclusive badges of fraud that may be used to prove the fraudulent intent of the transferor. *Brentwood Lexford*, 292 B.R. at 263.

The DOD had a first lien on the property, with a secured claim of approximately $3,700,000. Newbern testified the property had an appraised value of about $1,700,000, which the trustee confirmed through her investigation. According to Martyn, Frisbie negotiated a release with the DOD for $150,000. The DOD signed the release in July 2001, but Martyn did not record the release until January 2002. After Ballister foreclosed on its second lien, Ballister paid DOD the $150,000. Ballister ended up with title to the property, subject to this dispute. After payment of alleged environmental costs, clean-up and improvements and other costs, Ballister stands to recover the $472,000 (less the settlement amount) being held by the trustee, even though the DOD, the first lienholder, received only $150,000 on its $3,700,000 claim.

Frisbie and Martyn were friends. They have their offices in the same building. They engage in business activities together. Newbern testified that Martyn was Imperial's "money man." Ballister loaned money to Imperial but did not secure the loan until some time after making the loan. This occurred at a time when Imperial was insolvent; its assets could not pay its already existing secured loan to the DOD.

While negotiating with the DOD, Frisbie caused Imperial to transfer the property to another entity controlled by Frisbie. Ballister considered that a default and foreclosed after Frisbie completed his negotiations with the DOD. Ballister ended up with the property while Frisbie shielded Ballister from the DOD. The trustee has a reasonable probability of establishing that the DOD did not receive the value of its security interest in the property.

The situation implicates several badges of fraud. The trustee has a reasonable prospect of establishing that the debtor engaged in the transfer with the intent to hinder or delay, if not defraud, the DOD, its secured creditor. The DOD did not release its lien until it received its payment, which followed the foreclosure.

Avoiding the transfer avails the unsecured creditors little unless the trustee can also equitably subordinate the Ballister claim. Ballister has filed a proof of a secured claim of $1,269,957, which includes the proceeds of the sale of the property. The claim also includes interest, fees, costs, advances on the note, real estate taxes, the $150,000 DOD payment, environmental cleanup, maintenance and other expenses. The objecting creditors question the magnitude of the environmental cleanup costs. Beyond that, Ballister likely would have an allowed secured claim, which would include the proceeds from the sale of the property in the event of a successful avoidance action.

Equitable subordination is a remedial measure which is used only sparingly. *In re U.S. Abatement Corp.*, 39 F.3d 556, 561 (5th Cir.1994). For equitable subordination, the trustee would have to establish: (1) that Ballister engaged in some type of inequitable conduct; (2) that the conduct resulted in injury to the creditors or conferred an unfair advantage on Ballister; and (3) the invocation of equitable subordination would not be inconsistent with the provisions of the Bankruptcy Code. *Id.*

Based on the evidence at the hearing on the trustee's Rule 9019 motion, the trustee may be able to establish that Ballister obtained a secured position after it made its loan to the debtor and at a time

when the debtor was insolvent. Considering the relationship between Frisbie and Martyn, such actions could amount to inequitable conduct. *See, e.g., In re Herby's Foods, Inc.*, 2 F.3d 128, 131 (5th Cir.1993). The trustee may then be able to establish that by this conduct, Ballister became a secured creditor when it should have been an unsecured creditor, thereby obtaining an unfair advantage over other creditors. The events leading to the foreclosure with the foreclosure itself could support the conclusion of an unfair advantage. But the trustee may only subordinate a claim to the extent necessary to correct the harm or unfair advantage caused by the inequitable conduct. *Id.* The objecting creditors contend that the Ballister claim should be subordinated to the level of equity, but the trustee's most likely remedy would be subordination to the level of general unsecured creditors, assuming the trustee prevails on the other elements.

In summary, considering the complexity of litigation, the trustee has little likelihood of avoiding the deed of trust itself. The trustee has little likelihood of avoiding the foreclosure sale on the grounds of a constructively fraudulent conveyance. The trustee has a greater likelihood of avoiding the foreclosure based on the theory of intent to hinder or delay the DOD, as the first lienholder. The trustee has a reasonable prospect of subordinating the Ballister claim to that of the unsecured creditors, but little likelihood of subordinating the claim to the level of equity. If the trustee prevails on the intent to hinder or delay claim, the court would anticipate that the DOD would consider obtaining relief in this case. If the DOD seeks and obtains relief, the subordination would have virtually no positive impact on the unsecured creditors. If the DOD does not seek relief, avoiding the foreclosure and subordinating the Ballister claim to the priority of general unsecured creditors would in-

crease the dividends for unsecured creditors.

In addition to this analysis of the probability of success on the merits, the court finds that litigation would be expensive. The trustee has no unencumbered funds with which to work. While the trustee holds the proceeds of the sale of the property, those proceeds would only be available if the trustee avoids the foreclosure, subordinates the Ballister claim and defends any effort of the DOD to reassert its secured position. This potential three-pronged litigation would delay the administration of the estate with potentially no benefit for the unsecured creditors. Yet, the objecting creditors encourage the trustee to run that risk, with their counsel agreeing to prosecute the litigation if they are eligible for retention by the estate as special counsel.

The court balances these considerations as follows: The trustee has a basis to prosecute an avoidance action and an equitable subordination action but, even giving her the benefit of the doubt on the risks and difficulties of establishing intent to hinder or delay the DOD, little likelihood of subordinating the Ballister claim below that of the general unsecured creditors. If the trustee prevails on the avoidance action, the court questions whether the DOD would likely seek relief. Meanwhile, the estate faces delay, expense and the uncertainty of who would represent the trustee in the litigation.

With a prospect of avoiding the foreclosure and subordinating the claim to that of general unsecured creditors, the court finds that the $20,000 settlement is below the range of reasonableness. The motion must therefore be denied. The risks to Ballister, including its costs of litigation, and the potential recovery for the estate, even if it ultimately does not benefit unse-

cured creditors, compels a higher settlement amount to be within the range of reasonableness.

Ballister should consider a settlement for a greater amount considering the risks as analyzed by the court. The court observes that a settlement for a somewhat greater amount, an amount bringing the settlement into a range of reasonableness, would be advisable. The objecting creditors must recognize that litigation is pointless if it will not significantly increase their dividend. Ballister must recognize, on the other hand, that the prospect of a reduced recovery and a potential dispute with the DOD, augurs an increased settlement amount. With the prospect that the litigation ultimately could have an impact on the distributions to unsecured creditors and considering the delay, expenses and uncertainty, the trustee and Ballister, with the involvement of the objecting creditors, would be well advised to renew the settlement discussions.

Based on the foregoing,

**IT IS ORDERED** that the motion of Diane G. Reed, the Chapter 7 trustee of the bankruptcy estate of Imperial Tooling and Manufacturing, Inc., to approve a settlement agreement with Ballister Group, Inc., is **DENIED** without prejudice to the prosecution of an amended settlement motion.